# MCLAUGHLIN & STERN, LLP
### FOUNDED 1898

**LEE S. SHALOV**
Partner
lshalov@mclaughlinstern.com
Direct Dial: (646) 278-4298

260 MADISON AVENUE
NEW YORK, NEW YORK 10016
(212) 448–1100
FAX (212) 448–0066
www.mclaughlinstern.com

**GREAT NECK, NEW YORK**
**MILLBROOK, NEW YORK**
**WESTPORT, CONNECTICUT**
**WEST PALM BEACH, FLORIDA**
**NAPLES, FLORIDA**

May 1, 2020

**VIA E-MAIL (jamie.wozman@lewisbrisbois.com)**
Jamie R. Wozman, Esq.
Lewis Brisbois Bisgaard & Smith LLP
77 Water Street, Suite 2100
New York, New York 10005

Re:   ***Bruce J. Reid v. Jonathan S. Sack, et al.*, Civil Action No. 20-cv-01817 (VM)**

Dear Ms. Wozman:

On behalf of Plaintiff Bruce J. Reid ("Plaintiff"), and in accordance with Section II.B.1. of Judge Marrero's Individual Rules of Practice, we write to address the alleged pleading deficiencies described in your letter dated April 16, 2020 (the "Pre-Motion Letter") served on behalf of Defendants Jonathan S. Sack, Michael H. Mui, and Sack & Sack, LLP ("Defendants").[1]

As an initial matter, no matter how it is characterized, this case is about more than just a simple *mistake* by Defendants. Plaintiff put his trust and faith in Defendants, as attorneys licensed to practice law in the State of New York and officers of the court, and Defendants abused that privilege and position of power not only through their negligence (which gives rise to a *bona fide* legal malpractice claim), but by knowingly and intentionally lying to Plaintiff and actively deceiving him, both before he retained them and, later, when he exercised due diligence in inquiring about the status of his claims. Defendants' misconduct in this case constitutes one of the most egregious examples of attorney deception imaginable, and there can be no doubt that Defendants severely harmed Plaintiff and prejudiced his rights.

## Fraud, Breach of Fiduciary Duty, and Negligent Misrepresentation

Turning to Defendants' specific allegations, Plaintiff disagrees with the assertion that "[i]t is irrefutable that the fraud, negligent misrepresentation, and breach of fiduciary claims asserted in the Complaint are premised on the *precise facts as the legal malpractice claim* and seek the same relief." *See* Pre-Motion Letter, p. 1 (emphasis added). In fact, as alleged in the Complaint, the legal malpractice committed by Defendants consisted primarily of negligence in failing to prosecute Plaintiff's meritorious claims against ICAP both before FINRA and in state court. *See* Compl. ¶¶ 28-62. Nothing more than allegations tending to show that Defendants failed to prosecute Plaintiff's claims with the "care, skill and diligence commonly possessed and exercised by members of the legal profession" is required for Plaintiff to have adequately pled the "attorney negligence" element of his legal malpractice claim. *See*, *e.g.*, *Long v. Cellino & Barnes, P.C.*, 68

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Complaint. CM/ECF Doc. 7 ("Compl.")

**McLaughlin & Stern, LLP**
Jamie R. Wozman, Esq.
May 1, 2020
Page 2

A.D.3d 1706, 1707, 892 N.Y.S.2d 692, 693 (4th Dep't 2009) (finding attorney negligence where defendants failed to "commence an action against the proper parties in a timely manner").

As also alleged in the Complaint, however, Defendants *separately* committed fraud by knowingly and recklessly lying to Plaintiff, who reasonably relied on Defendants' lies to his detriment, both by retaining Defendants in the first instance and by inordinately delaying his termination of them; Defendants *separately* breached their fiduciary duties of "care, candor, loyalty and good faith" to Plaintiff and *separately* made negligent misrepresentations to Plaintiff throughout the relevant time period. Even if Plaintiff could theoretically fail on his legal malpractice claim, he can still prevail on one or more of his claims for fraud, breach of fiduciary duty, and negligent misrepresentation; thus, these claims are "alternative," not "duplicative." *In re Skat Tax Refund Scheme Litigation*, 356 F.Supp.3d 300, 325 (S.D.N.Y. 2019) (Kaplan, J.).

Plaintiff's claim for fraud, in particular, would plainly survive a motion to dismiss because it requires pleading and subsequently proving scienter, not "mere negligence" as required for a legal malpractice claim. *See*, *e.g.*, *Burke, Albright, Harter & Rzepka, LLP v. Sills*, 83 A.D.3d 1413, 1414, 919 N.Y.S.2d 731, 732 (4th Dep't 2011) (recognizing distinction between claims based on allegations of intent to deceive and legal malpractice claim based on negligence); *Luv N Care Ltd. v. Shiboleth LLP*, No. 16-cv-3179 (AJN), 2017 WL 3671039, at *9 (S.D.N.Y. Aug. 8, 2017) (Nathan, J.) (denying motion to dismiss fraud claim as duplicative of legal malpractice claim where plaintiff alleged that former attorneys "lied about their relationship with certain attorneys and about their qualifications" to induce plaintiffs into retaining them). Moreover, when the allegations in the Complaint are afforded all favorable inferences (as they would have to be on a motion to dismiss), it is apparent that Plaintiff has alleged more than just a mere "failure to disclose" the legal malpractice. *See*, *e.g.*, *Lytell v. Lorusso*, 74 A.D.3d 905, 907, 903 N.Y.S.2d 98, 101 (2d Dep't 2010); *Postiglione v. Castro*, 119 A.D.3d 920, 922, 990 N.Y.S.2d 257, 259 (2d Dep't 2014).

## Legal Malpractice

The next purported pleading deficiency raised by Defendants is that Plaintiff allegedly failed to "demonstrat[e]" that, "but for" Defendants' negligent conduct, Plaintiff would have prevailed in the underlying matter. *See* Pre-Motion Letter, p. 2. However, Plaintiff need not definitively "demonstrate" anything at the pleading stage, and any comments by the District Court in *Kirk v. Heppt*, 532 F.Supp.2d 586, 591 (S.D.N.Y. 2008) suggesting otherwise have been taken out of context. Indeed, through his Complaint, Plaintiff has fully satisfied his obligation to plead simply "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The elements of Plaintiff's legal malpractice will be further "demonstrated," after thorough discovery, through a dispositive motion or at trial.

Plaintiff is also not required to "identify[] what actual claims are now time barred," and Plaintiff has, in fact, adequately alleged that he likely "would have been reinstated to his at will position" since, *inter alia*, Plaintiff "was a highly successful broker" with notable "stature in the industry" (Compl. ¶¶ 10-11); prior to his termination, Plaintiff had been working for ICAP for almost 7 years with ICAP extending his contractual term of employment *twice* before (*id.* ¶¶ 10-13); and Plaintiff was a top performer, generating millions of dollars in brokerage revenues per year (*id.* ¶¶ 20-21). Significantly, even if Plaintiff could not ultimately prove that he would have been reinstated, that would not end the inquiry in any event, since Plaintiff has also alleged that he

**McLaughlin & Stern, LLP**
Jamie R. Wozman, Esq.
May 1, 2020
Page 3

was damaged by, among other things, ICAP's wrongful withholding of compensation due and owing at the time of his unlawful termination, ICAP's improper enforcement of the non-compete provision, and ICAP's improper cessation of payment to the Katten Firm.  In other words, Plaintiff has adequately alleged various types of "damage and injury" that he sustained as a direct result of his wrongful termination by ICAP and a proximate result of Defendants' misconduct in failing to prosecute his claims against ICAP.[2]

**Intentional Infliction of Emotional Distress**

First, the statute of limitations for Plaintiff's intentional infliction of emotional distress ("IIED") claim was likely tolled, under the doctrines of continuous harm and/or continuous representation, until February 6, 2020, when Plaintiff discharged Defendants as his attorneys.  *See* Compl. ¶ 62.  At very least, Defendants' pattern and practice of lies, deceit, and intentional harm extended until June 25, 2019 when Defendants e-mailed Plaintiff an entirely fabricated story about their attendance at a "court conference" (which never actually occurred), an opportunity to "resolve the case" (which never actually existed), and this "positive development" in the case (which, unbeknownst to Plaintiff, was a complete and utter farce).  Accordingly, Plaintiff's IIED claim is timely and not subject to dismissal on statute of limitations grounds.

Second, for the reasons set forth above and in the Complaint, this is a case involving the "rarest circumstances," going further than mere negligence and into the realm of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . . ."  Indeed, in addition to supporting Plaintiff's claim for IIED, such conduct – once fully proven – likely warrants disbarment or other significant sanctions.  *See*, *e.g.*, *In re Brown*, 32 A.D.3d 13, 14-15, 817 N.Y.S.2d 393, 394-95 (2d Dep't 2006).

**Judiciary Law 487**

The defense raised with respect to Plaintiff's claim under N.Y. Judiciary Law § 487 serves only to highlight one example of Defendants' inexplicable misconduct – *i.e.*, notwithstanding their promise to commence a state court action against ICAP, and Plaintiff's reasonable expectation that they would do so, Defendants *admittedly* never actually commenced the action.  Thereafter, Defendants blatantly lied to and deceived Plaintiff, falsely convincing him that he was a "party" to a pending action and weaving a web of lies regarding wholly fictitious occurrences and communications concerning the purported action, as fully alleged in the Complaint.  These facts are highly unique and distinguishable from those at issue in the cases cited by Defendants in their Pre-Motion Letter, wherein actions were actually commenced at some point, but the alleged deceit occurred either before or after those actions were pending.

Based on all of the foregoing, Plaintiff is unwilling to dismiss any of the six claims alleged in the Complaint.  Moreover, to the extent the Court might find any deficiency with respect to any

---

[2]     The argument that legal advice obtained by Plaintiff was the "proximate cause of his termination for cause" deserves only short shrift since, first, it improperly conflates causation with respect to Plaintiff's underlying wrongful termination and causation with respect to the injury suffered as a result of Defendants' legal malpractice, and, second, even though Plaintiff chose to stop participating in ICAP's "internal inquiry" on the advice of counsel, ICAP still had the option to not retaliate against Plaintiff and use his supposed "failure to cooperation an internal inquiry" as a pretext for his alleged termination with cause.

**McLaughlin & Stern, LLP**
Jamie R. Wozman, Esq.
May 1, 2020
Page 4

such claim, Plaintiff would seek a reasonable opportunity to replead.[3]

Sincerely,

*/s/ Lee S. Shalov*

Lee S. Shalov, Esq.

cc:     VIA FACSIMILE (212-805-6382)
        Hon. Victor Marrero, U.S.D.J.
        U.S. District Court for the Southern District of New York
        500 Pear Street, Room 11B
        New York, New York 10007

---

[3]     The allegations set forth in an amendment would include, without limitation: that Defendants' negligence prevented Plaintiff from asserting specific claims against ICAP, including violation of New Jersey's Conscientious Employee Protection Act (one-year statute of limitations) and wrongful discharge based on tort under New Jersey common law (two-year statute of limitations), which are now time-barred; that Plaintiff would have prevailed on the now time-barred claims "but for" Defendants' negligence; and additional "facts tending to show that [P]laintiff would have been reinstated to his at will position," such as how much business Plaintiff generated as compared to colleagues in similar positions, his excellent working relationship with ICAP managers, and his exemplary employment history. Plaintiff is also investigating an additional potential claim against Defendants under N.Y. Gen. Bus. Law § 349 based on newly discovered information regarding the widespread and repetitious nature of their deceptive acts and practices.