```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
BRUCE REID,                         :
                                    :
            Plaintiff,              :
                                    :       20 Civ. 1817 (VM)
    - against -                     :
                                    :
JONATHAN S. SACK, MICHAEL H. MUI,   :
and SACK & SACK, LLP,               :       DECISION AND ORDER
                                    :
            Defendants.             :
-----------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/12/2021

**VICTOR MARRERO, United States District Judge.**

Plaintiff Bruce Reid ("Reid" or "Plaintiff") brings this action against Jonathan S. Sack ("Sack"), Michael H. Mui ("Mui"), and Sack & Sack LLP (the "Firm" or "Sack Firm," and collectively, "Defendants") alleging various claims stemming from Defendants' legal representation of Reid in relation to his termination from ICAP Capital Markets LLP ("ICAP"). Plaintiff asserts six causes of action: (1) fraud; (2) negligent misrepresentation; (3) legal malpractice; (4) breach of fiduciary duty; (5) violation of Judiciary Law § 487; and (6) intentional infliction of emotional distress ("IIED"). Now before the Court is Defendants' Motion to Dismiss. (See "Motion," Dkt. No. 17.)

The Court construes the correspondence submitted by Defendants as a motion to dismiss the Complaint pursuant to

1

Federal Rule of Civil Procedure ("Federal Rule") 12(b)(6).[1] For the reasons discussed below, Defendants' Motion is GRANTED in part and DENIED in part.

### I. BACKGROUND

A. FACTS AND PROCEDURAL BACKGROUND[2]

    a. Reid's Dispute with ICAP and Retention of Defendants

Plaintiff hired Defendants to represent him in a dispute with his former employer, ICAP. Plaintiff believed that he had been wrongly terminated from ICAP as retaliation for his participation in United States Department of Justice ("DOJ") and Commodity Futures Trading Commission ("CFTC") investigations into ICAP's trading practices. Plaintiff contends that his wrongful termination cost him millions of dollars in foregone salary and bonus, an inability to secure subsequent employment for a time, out-of-pocket legal expenses, and a lower salary at his eventual employment.

---

[1] See Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion to dismiss).

[2] The factual background below, except as otherwise noted, derives from the Complaint (see "Complaint," Dkt. No. 7) and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Except when specifically quoted, no further citation will be made to the Complaint or the documents referred to therein.

After the DOJ and the CFTC began investigating ICAP in 2013, Reid participated in a number of interviews and depositions in cooperation with the investigations. He contends that by 2014, ICAP senior management grew angry at such cooperation and demanded Reid meet with senior management to discuss it. After Reid refused to meet with ICAP management, on October 28, 2014, ICAP terminated Reid for failure to cooperate in an internal inquiry. On November 3, 2014, ICAP informed Reid they would be strictly enforcing a noncompetition provision of his Employment Agreement. Reid contends his termination was in retaliation for his participation in the DOJ and CFTC investigations.

In the summer of 2015, Reid reached out to Defendants to convey his interest in hiring the firm to pursue claims against ICAP related to his allegedly wrongful termination. On November 4, 2015, Reid again contacted Defendants regarding his claims. Defendant Sack responded and told Reid to schedule a time to meet in person.

From there, Reid began corresponding with Mui, an associate attorney at the Sack firm. From November 2015 to February 2016, the parties exchanged various emails about Reid's claims, until eventually meeting in person on February 24, 2016. Plaintiff alleges that Defendants confirmed they

would pursue Reid's claims and discussed a contingency fee arrangement as compensation for their work.

    b. <u>The Financial Industry Regulatory Authority ("FINRA") Arbitration</u>

Reid alleges that after retaining Defendants, Defendants delayed filing an arbitration proceeding on his behalf and then lied to him about when the arbitration was commenced. Plaintiff alleges that after the February 24, 2016 meeting, Defendants promised to draft a FINRA complaint. But it was not until three months later that Mui forwarded to Reid a first draft of the complaint.

Mui and Reid then corresponded regarding ICAP's by-laws, which allegedly bore on the claims Reid might bring against ICAP. After not being able to obtain the by-laws, Reid and Defendants agreed to commence a FINRA action anyway. In September 2016, Mui represented to Reid that a FINRA proceeding had been filed.

Over the next few months, Reid followed up with Mui to ascertain the status of his FINRA action. Mui responded that he had not heard whether the claim had been processed by FINRA but was following up for more information. On January 30, 2017, Mui informed Reid that "there was an issue with the paperwork" in his case, (Complaint ¶ 48), but that after it

4

was cleared up, the delays would be over. Mui made similar representations to Reid in April and May of 2017.

Reid contends that, despite these representations, Defendants did not file a claim with FINRA on his behalf until July 2017, almost a year after Mui represented it had been filed. On August 10, 2017, FINRA advised Defendants that Reid's claim was ineligible for arbitration before FINRA. Mui informed Reid that this was a mistake by FINRA and that he would be speaking to the FINRA director about Reid's case. Despite Mui's representations, apparently, the FINRA action never proceeded.

### c. The State Court Action

In December 2017, Mui sent Reid an email stating, "[w]aiting on finra [sic] is getting us nowhere. Let's discuss filing in court." (Complaint ¶ 55.) In January 2018, Mui represented that he (1) had filed a state court complaint the week prior and (2) would be sending the complaint to the process server for service. On February 20, 2018, Reid again followed up, and Mui said he would contact the process server for an update. On March 13, 2018, Mui informed Reid the complaint had been served and that he would be requesting a preliminary conference.

On September 14, 2018, Mui represented that Reid's "court date was rescheduled because it was improperly put on

5

during a Jewish holiday," the supposed defendants in that case were "still delinquent with discovery," and he would ask for "monetary sanctions." (Id. ¶ 59.) Months later, Mui represented that he attended a conference on June 25, 2019. With respect to this conference, Mui represented:

> I attended the court conference this morning. The other side sent a coverage attorney who was not prepared to discuss anything about the case. The court attorney was disappointed with their lack of cooperation and asked me if we could resolve the case. I told her that we would welcome any good faith opportunity to resolve this but that we needed a dance partner on the dance floor to make that happen. She said she will be reaching out to the other side to gauge their interest and to see whether or not a settlement conference at this time makes sense. Hopefully this is a positive development and we can gain some momentum.

(Id. ¶ 60.)

Reid alleges that on February 4, 2020, he learned that no state court action was ever filed by Defendants on his behalf. Reid further contends no discovery requests were served, and no court conferences were attended. Additionally, Reid alleges that Defendants' excuses with respect to the delays in filing the FINRA arbitration were similarly false. On February 6, 2020, Reid discharged Defendants as his attorneys.

Shortly after Plaintiff filed the Complaint, Defendants, by letter, moved to dismiss the Complaint. (See Motion.) Plaintiff responded to this letter, (see Dkt. No. 21), and

6

attached a Proposed Amended Complaint with additional allegations related to his claims, (see Dkt. No. 21-1). The Court has considered both these submissions and the parties' initial correspondence in rendering this decision.

B. THE PARTIES' ARGUMENTS

Defendants argue that (1) Plaintiff's fraud, breach of fiduciary duty, and negligent misrepresentation claims should be dismissed as duplicative of the legal malpractice claim; (2) the legal malpractice claim should be dismissed for lack of proximate cause; (3) the IIED claim should be dismissed as untimely and for lack of extreme and outrageous behavior; and (4) Plaintiff's claim based on the violation of Judiciary Law § 487 ("Section 487") should be dismissed because the alleged misrepresentation did not occur while the parties were engaged in litigation.

Plaintiff responds that (1) the fraud, breach of fiduciary duty, and negligent misrepresentations claims are not duplicative because they have separate factual bases and different damages; (2) the Complaint sufficiently alleges that Reid suffered damages proximately caused by Defendants' malpractice; (3) the IIED claim is timely and otherwise meritorious; and (4) the Section 487 claim survives because Defendants fraudulently represented that Reid was a party to an action.

7

## II. STANDARD OF REVIEW

"To survive a motion to dismiss [pursuant to Federal Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The task of the Court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted). The Court must accept all well-pleaded factual allegations in the Complaint as true and draw all reasonable inferences in Plaintiffs' favor. See Chambers, 282 F.3d at 152 (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2011)).

## III. DISCUSSION

A. <u>Fraud, Negligent Misrepresentation, and Breach of Fiduciary Duty</u>

Defendants argue these three claims should be dismissed as duplicative of the legal malpractice claim. Defendants correctly note that when a cause of action such as fraud or negligent misrepresentation is based on the same facts as a legal malpractice claim, those claims can be dismissed as duplicative. <u>MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.</u>, 701 F. Supp. 2d 518, 532 (S.D.N.Y. 2010); <u>Decker v. Nagel Rice LLC</u>, No. 09 Civ. 9878, 2010 WL 2346608, at *4 (S.D.N.Y. May 28, 2010); <u>Daniels v. Turco</u>, 923 N.Y.S.2d 848 (App. Div. 2011). And, it is likewise true that it is not the theory behind the claim that renders it duplicative, but rather the factual premises and damages that matter. <u>Estate of Nevelson v. Carro, Spanbock, Kaster & Cuiffo</u>, 736 N.Y.S.2d 668 (App. Div. 2002). At this stage, while drawing all inferences in favor of Plaintiff, the Court concludes that dismissal of the fraud and negligent misrepresentation claims would be premature.

Plaintiff makes numerous allegations that he contends form the basis of his fraud and negligent misrepresentation claims but not his legal malpractice claim. (<u>See</u>, <u>e.g.</u>, Complaint ¶¶ 48, 55, 60.); <u>accord</u> <u>MIG</u>, 701 F. Supp. 2d at 533; <u>Lytell v. Lorusso</u>, 74 A.D.3d 905, 907 (App Div. 2d Dept.

9

2010). In addition, Plaintiff adequately alleges damages separate and apart from those associated with the legal malpractice claim. For example, it is possible that Plaintiff will be able to recover the consequential damages he claims, unrelated to those damages he allegedly suffered as a result of failing to prevail in the attempted FINRA arbitration and state action. (See Complaint ¶¶ 70, 75.) Thus, further factual development is warranted to determine the extent of Plaintiff's alleged damages, and which claims might give rise to those alleged damages.

Plaintiff's claim of breach of fiduciary duty, on the other hand, may be dismissed now. Plaintiff pleads no duty separate from Defendants' duty to pursue Reid's claims as his attorneys. Claims asserting attorney liability for breach of fiduciary duty are "coextensive" with legal malpractice. Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 10 A.D.3d 267, 271-72 (N.Y. App. Div. 2004); see also Kirk v. Heppt, 532 F. Supp. 2d 586, 591 (S.D.N.Y. 2008). Without an allegation that Defendants breached a duty they owed to Reid not encompassed by the duty to vigorously pursue Reid's claims, the breach of fiduciary duty claim is properly dismissed as duplicative of the legal malpractice claim. See, e.g., Weil, Gotchal & Manges, 10 A.D.3d at 271-72; Estate of Nevelson, 736 N.Y.S.2d at 668; Murray Hill Invs. v Parker

Chapin Flattau & Klimpl, LLP, 759 N.Y.S.2d 463 (N.Y. App. Div. 2003).

   B. Legal Malpractice

"To prevail on a claim of legal malpractice . . . a plaintiff must establish the failure of an attorney to exercise the degree of skill commonly exercised by an ordinary member of the legal community, proximately resulting in damages to the client." Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 393 (S.D.N.Y. 2000). "The four elements of a legal malpractice claim are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual damage resulting from the professional's negligence." Id.; Kirk, 532 F. Supp. 2d at 591.

"To establish the element of causation, a plaintiff must show that he or she would have prevailed in [an] underlying action . . . but for the attorney's negligence." Snolis v. Clare, 917 N.Y.S.2d 299, 301 (App. Div. 2011); see also Rubens v. Mason, 527 F.3d 252, 254–55 (2d Cir. 2008). Although this causation requirement is a "high bar to attorney malpractice liability," Flutie Bros. LLC. v. Hayes, No. 04 Civ. 4187, 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006), at the motion

11

to dismiss stage, a plaintiff "need only allege, not prove, the proximate cause element of the legal malpractice claim," Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008). Still, "[t]he question of whether a pleading sufficiently alleges proximate cause . . . is appropriately considered by the court on a motion to dismiss." Henkel v. Wagner, No. 12 Civ. 4098, 2013 WL 12084503, at *6 (S.D.N.Y. Mar. 18, 2013).

Given the lenient standard for a motion to dismiss, it would be premature to dismiss Plaintiff's legal malpractice claim now. Defendants' argument in principle is that Plaintiff failed to adequately identify claims that he would have prevailed on but for Defendants' negligence. (See Motion at 3.) Although the Complaint is brief regarding the claims Reid may have prevailed on had they been prosecuted, the proposed amended complaint is helpful in expanding on specific claims, including violation of New Jersey's Conscientious Employee Protection Act and ICAP's wrongful termination of Reid's employment. (See Dkt No. 21-1, ¶¶ 84-94.) Given the two documents are consistent, and taking the factual allegations regarding Reid's termination and Defendants' negligence to be true, the Complaint makes plausible allegations that Reid may have recovered damages under now time-barred theories. Of course, if discovery were

12

to show that Reid cannot prevail on these theories, the Court can again consider Defendants' arguments at a later point. Until then, the Court is persuaded that dismissal would be premature.

C. <u>Intentional Infliction of Emotional Distress</u>

"The state law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." <u>Bender v. City of New York</u>, 78 F.3d 787, 790 (2d Cir. 1996); <u>Silver v. Kuehbeck</u>, No. 05 Civ. 35, 2005 WL 2990642, at *7 (S.D.N.Y. Nov. 7, 2005); <u>Howell v. N.Y. Post Co.</u>, 612 N.E.2d 699 (N.Y. 1993). "[T]he requirements of the rule are rigorous, and difficult to satisfy." <u>Id.</u> Given the "rigorous" requirements, courts often dismiss claims under the "extreme and outrageous conduct" prong as a matter of law. <u>Id.</u> (holding that "the outrageousness element" is "susceptible to determination as a matter of law"). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Murphy v. Am. Home Prods. Corp.</u>, 58

13

N.Y.2d 293, 303 (1983) (quoting Restatement (Second) of Torts § 46 ("Restatement") cmt d).

The Court is not persuaded that the allegations in the Complaint, including Defendants' misrepresentation of the status of a lawsuit, the status of filings in an arbitration, or the existence of and attendance at a court conference, are examples of "extreme and outrageous" conduct giving rise to a IIED claim. See Green v. Leibowitz, 500 N.Y.S.2d 146 (App Div. 1986) ("The conduct complained of in the case at bar, viz., intentional misrepresentations concerning the status and filing of the plaintiff's disability claim, does not rise to a level of 'extreme outrage', nor does it exceed 'all bounds usually tolerated by decent society.'"(quoting Restatement)). While the allegations in the Complaint, if true, raise serious questions about Defendants' practice of law, it does not follow that this conduct exceeds "all bounds usually tolerated by decent society." Restatement, cmt. d.

Plaintiff cites very little authority for his theory that the behavior alleged is "extreme and outrageous" as required for an IIED claim. Instead, Plaintiff largely relies on the fact that if his allegations are proven, Defendants would likely be subject to sanction by the New York State bar authorities. See In re Brown, 32 A.D.3d 13, 14-15 (N.Y. App. Div. 2006). But Plaintiff points to no authority suggesting

14

that a breach of professional ethical obligations alone is enough to demonstrate extreme or outrageous conduct. Plaintiff instead relies on Conradt v. NBC Universal, Inc., which stated that the breach of professional ethical obligations *combined with* the plaintiff's "position of power, both with its ability to disseminate information to the public and with its apparent influence over the police" might give rise to an IIED claim. 536 F. Supp. 2d 380, 397 (S.D.N.Y. 2008). There are no similar allegations here. Therefore, because Plaintiff relies only on conduct of the alleged breach of Defendants' professional and ethical obligations as lawyers, conduct which again is certainly, if true, a serious breach of the duties lawyers owe to clients, the Court is not persuaded it exceeds "all bounds usually tolerated by decent society." The Court will dismiss Plaintiff's IIED claim as a matter of law.[3]

### D. Violation of Judiciary Law § 487

An attorney violates Judiciary Law § 487 if the attorney engages in "any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." Courts have interpreted the scope of Section 487 -- through the language "the court or any party" -- to expressly limit

---

[3] Because the Court is persuaded that the IIED claim should be dismissed it is not necessary to reach the parties arguments with respect to the statute of limitations.

15

the statute to conduct that occurs during the pendency of litigation. See Bill Birds, Inc. v. Stein Law Firm, P.C., 35 N.Y.3d 173, 178 (2020); Loof v. Lawton, 97 N.Y. 478, 482 (1982); see also O'Brian v. Alexander, 898 F. Supp. 162, 168-69 (S.D.N.Y. 1995). Further, courts have noted that because violations of Section 487 are criminal acts, the court "must be circumspect to ensure that penal responsibility is not extended beyond the fair scope of the statutory mandate." Bill Birds, 35 N.Y.3d at 178. Plaintiff concedes that no lawsuit was ever initiated by Defendants on his behalf. (See Dkt. No. 21, at 6.) Therefore, because none of Defendants' alleged wrongful conduct occurred during the pendency of pertinent litigation, the Court will dismiss this claim.

Plaintiff argues that because he was fraudulently told that he was a party to an action, his case is unique and can proceed. While his case may be unique, Plaintiff does not adequately explain how that fact satisfies the element that the requisite deceit occur during the pendency of litigation. Instead, that interpretation conflicts with the express language of the statute, and therefore the Section 487 claim can be properly dismissed.

## IV. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the Motion (Dkt. No. 17) of defendants Jonathan Sack, Michael Mui, and Sack & Sack, LLP is **GRANTED** as to Counts IV (Breach of Fiduciary Duty), V (Judiciary Law § 487), and VI (Infliction of Emotional Distress) of the complaint of plaintiff Bruce Reid, and **DENIED** as to the remaining claims.

**SO ORDERED.**

Dated: New York, New York
       12 January 2021

_____
Victor Marrero
U.S.D.J.